IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICN GURANTEE AND LIABILITY INSURANCE CO., | ) ) | |
| Plaintiff, | ) ) | |
| vs | ) ) | Civil Action No. 17-582 |
| ARCH INSURANCE CO., TARGET DRILLING, INC., PINNACLE MINING CO., LLC and GREAT MIDWEST INSURANCE CO., | ) ) ) | Magistrate Judge Mitchell |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

  Plaintiff, American Guarantee and Liability Insurance Co. (AGLIC), brings this action under Pennsylvania law seeking monetary and declaratory relief under a series of primary and excess insurance policies issued to Target Drilling, Inc. (TDI), which also purchased policies from Arch Insurance Co. (Arch) and Great Midwest Insurance Co. (Great Midwest). TDI was engaged by Pinnacle Mining Co., LLC (Pinnacle) to perform certain services at one of Pinnacle's mines in West Virginia and the contract required TDI to include Pinnacle as an "additional insured" under TDI's primary insurance policies, but only for liability "to the extent caused by the negligent acts or omissions of [TDI]." Pinnacle, TDI and others were sued by the owners of an adjacent mine for property damage to certain equipment within that mine, as well as damage to the mine itself and minerals (coal) within that mine (the Underlying Tort Action).

  In this action, AGLIC seeks to recover certain defense costs and expenses it has advanced on behalf of TDI in connection with the Underlying Tort Action, and certain declaratory relief under the insurance policies AGLIC issued to TDI, including a declaration that AGLIC has no duty to defend or indemnify Pinnacle as an "additional insured" under those primary and excess policies. Presently submitted for disposition is a motion to dismiss the Amended Complaint,

filed by Pinnacle, on the basis that Plaintiff has failed to point to sufficient contacts of Pinnacle with Pennsylvania to establish personal jurisdiction over it. For the reasons that follow, the motion will be granted.

Facts

Pinnacle owns and operates a certain coal mine, referred to as the "Pinnacle Mine," in Wyoming County, West Virginia. On February 12, 2015, Bluestone Coal Corporation purchased a certain coal mine, referred to as Double-Bonus Mine No. 65 ("Mine No. 65"), which was situated above the Pinnacle Mine. Pinnacle applied for and received a permit to construct a dewatering system for its Pinnacle Mine which entailed, inter alia, drilling a vertical borehole through a void (or inactive) sealed-off portion of Mine No. 65. Pinnacle elected to contract with TDI to perform certain work in connection with the dewatering system project. (Am. Compl. ¶¶ 12-15.)[1] The contract required TDI to include Pinnacle as an "additional insured" under TDI's primary insurance policies (which were issued in Pennsylvania by AGLIC, Arch and Great Midwest), but only for liability "to the extent caused by the negligent acts or omissions of [TDI]," i.e., vicarious liability claims. (Am. Compl. ¶¶ 8, 23-64, 74-76.)

Pinnacle, along with TDI and others, was subsequently sued by Bluestone Coal and Double-Bonus Mining Company for alleged property damage to certain equipment within Mine No. 65, as well as damage to the mine itself and minerals (coal) within that mine. The Underlying Tort Action was filed in the United States District Court for the Southern District of West Virginia on July 7, 2016, and on March 23, 2017, an Amended Complaint was filed alleging claims of negligence, trespass and willful, wanton or reckless conduct. (Am. Compl. ¶¶ 16-22 & Ex. A.) TDI tendered its defense in the Underlying Tort Action to Arch, Great

---

[1] ECF No. 24.

Midwest and AGLIC. (Am. Compl. ¶ 65.)

Procedural History

On May 4, 2017, Plaintiff filed this action against Arch, Pinnacle and TDI (ECF No. 1). On June 13, 2017, Pinnacle filed a motion to dismiss for lack of personal jurisdiction, as well as for insufficient service of process (ECF No. 16). In response, Plaintiff filed an Amended Complaint on June 27, 2017 (ECF No. 24) and the motion to dismiss was dismissed (ECF No. 30). The Amended Complaint added Great Midwest as an additional defendant. Jurisdiction is based on diversity of citizenship in that: AGLIC is a New York corporation with its principal place of business in Schaumburg, Illinois; Arch is a Missouri corporation with its principal place of business in New Jersey; TDI is a Pennsylvania corporation with its principal place of business in Smithton, Pennsylvania; Great Midwest is a Texas corporation with a principal place of business in Houston, Texas; Pinnacle is a Delaware LLC whose citizenship is alleged to be other than in Illinois and New York; and the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.00. (Am. Compl. ¶¶ 1-5, 9-10.) Count I seeks declaratory relief under the 2013 AGLIC commercial general liability ("CGL") policy against TDI and Pinnacle. Count II seeks declaratory relief under the AGLIC umbrella policies against TDI and Pinnacle. Count III seeks recovery of defense costs against Arch. Count IV seeks, in the alternative, recovery of defense costs against Great Midwest and Arch. Count V seeks, in the alternative, recovery of defense costs against TDI.

On July 14, 2017, Pinnacle filed another motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (ECF No. 33). Plaintiff filed a response on August 7, 2017 (ECF No. 51) and on August 21, 2017, Pinnacle filed a reply brief (ECF No. 61).

Pinnacle argues that: 1) it does not conduct "continuous and systematic" business in Pennsylvania and thus general personal jurisdiction cannot be asserted over it; and 2) the mere fact that Pinnacle contracted with TDI (a Pennsylvania corporation) for TDI to perform work at Pinnacle Mine in West Virginia does not suffice to establish specific personal jurisdiction over Pinnacle in Pennsylvania, and the claims against it should be dismissed or, in the alternative, this case could be transferred to the Southern District of West Virginia, where the Underlying Tort Action is currently pending.

AGLIC responds that: 1) Pinnacle has continuous and systematic contacts with Pennsylvania in that it was previously headquartered in Canonsburg, it operated mines in Pennsylvania, a longwell system was assembled and tested in Pennsylvania, it purchased $155,000 in hoses from Cypher Company in Pennsylvania which resulted in litigation in Allegheny County, it has brought suits in Allegheny County and some coal is directed through or transported through Pennsylvania via contracts with Pennsylvania companies; and 2) specific personal jurisdiction can be based on Pinnacle contracting with TDI, issuing a purchase order to TDI in Pennsylvania and asking to be covered as an additional insured on TDI's policies, and in addition Pinnacle contracted with other Pennsylvania companies for hammer rental and re-tipping work at the project, and various individuals communicated with them in Pennsylvania.

In a reply brief, Pinnacle indicates that: 1) AGLIC is incorrect in that its mines are not located in Pennsylvania, the brief period of time during which Pinnacle was owned by a Pennsylvania entity was long before the events leading to the Underlying Tort Action and the 2006 filing of a case in Allegheny County to aid in a West Virginia civil action is insufficient to establish general personal jurisdiction over Pinnacle in Pennsylvania; and 2) AGLIC erroneously cites cases involving parties to contracts, but this case does not, and the courts that have

addressed the specific issue of being named as an additional insured have held that such a relationship is insufficient for jurisdictional purposes.

Standard of Review

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)). The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," who only needs to establish a "prima facie case," although the court can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. Carteret Savs. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992). See also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Specific personal jurisdiction arises from a defendant's forum related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted). It is claim specific. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

As summarized by the Court of Appeals:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum.

5

> Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros [Nacionales de Columbia, S.A. v. Hall], 466 U.S. [408,] 414, 104 S.Ct. 1868 [(1984)]; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

O'Connor v. Shady Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King, 471 U.S. at 472, 476) (footnote omitted).[2]

With respect to general personal jurisdiction, the Supreme Court has held that the proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 134 S.Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Pennsylvania authorizes its courts to exercise general jurisdiction over partnerships and similar associations pursuant to 42 Pa. C.S. § 5301(a)(3) by showing: "[f]ormation under or qualification as a foreign entity under the laws of this Commonwealth," "[c]onsent, to the extent authorized by the consent," or "[t]he carrying on of a continuous and systematic part of its general business within this Commonwealth."

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). O'Connor, 496 F.3d at 316. Pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a), a plaintiff can establish specific personal jurisdiction by showing that a defendant has engaged in forum related activities.

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents

---

[2] Pinnacle does not address the issue of fair play and substantial justice. However, because AGLIC has failed to demonstrate that either general or specific personal jurisdiction may be asserted over Pinnacle, the Court need not address this issue.

"where the contact is sufficient under the Constitution of the United States," 42 Pa. C.S. § 5308, and "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

Facts Relating to Personal Jurisdiction

Pinnacle is a Delaware LLC with a mailing address in Natural Bridge, Virginia. It has registered agents for service of process in Delaware and West Virginia, but not in Pennsylvania. (ECF No. 33 Exs. 1, 2.)

David Trader, Engineering Manager at Pinnacle (Trader Aff. ¶ 1),[3] has submitted an affidavit in which he asserts that: 1) Pinnacle is not registered to do business in Pennsylvania and does not do business, own property, operate facilities, maintain officers or employees, or have systematic or continuous contacts with Pennsylvania; 2) Pinnacle is member managed by its designated managers, Ken McCoy and Jason McCoy, whose offices are located in Natural Bridge, Virginia; 3) Pinnacle is not directed, controlled, nor its activities coordinated, from Pennsylvania, it does not employ any persons to work on a day-to-day basis within Pennsylvania and it does not direct requests for proposals, bids, solicitations or advertisements in publications or markets within Pennsylvania; and 4) the contract and services giving rise to the Complaint arise out of work performed solely in West Virginia, on a proposal from TDI to perform the work in West Virginia, and it did not contemplate any activity by TDI or Pinnacle to be performed in Pennsylvania. (Trader Aff. ¶¶ 4-9, 11-13.) Pinnacle further notes that searches of various state and federal government databases confirm that it is not registered to do business in

---

[3] ECF No. 33 Ex. 3.

7

Pennsylvania and show that it does not operate any active or idled mines in Pennsylvania. (ECF No. 34 at 3 & nn.3-5.)

AGLIC contends that the following facts were omitted by Pinnacle but are relevant to the jurisdictional inquiry in this case:

1. Pinnacle contracted with TDI, a Pennsylvania corporation with its headquarters and principal place of business in Pennsylvania, and the specific declaratory relief sought in this litigation addresses Pinnacle as a purported "additional insured" insuring obligations by that specific contract.

2. All of the insurance contracts at issue in this case were issued in Pennsylvania to a Pennsylvania corporation and are governed exclusively by Pennsylvania law.

3. Pinnacle was a party to a substantial amount of communication directed to TDI in Pennsylvania related to the Pinnacle-TDI contract.

4. Pinnacle contracted with multiple additional Pennsylvania companies relative to the work which is the subject of the Underlying Tort Action.

5. Pinnacle was previously headquartered in Canonsburg, Pennsylvania (ECF No. 51 Ex. H).

6. Pinnacle previously owned and/or operated several mines in Pennsylvania (ECF No. 51 Ex. I at 3, 8, 49).

7. Pinnacle has other contacts with Pennsylvania, including but not limited to the fact that a major system used at Pinnacle's mine was assembled and tested in Pennsylvania, and hoses for the mine were purchased from a Pennsylvania company, which resulted in litigation against Pinnacle in Allegheny County (ECF No. 51 Ex. J at 2; Ex. K). (ECF No. 54 at 3-4.)

AGLIC notes that, on April 16, 2013, Pinnacle issued a Purchase Order in the amount of

8

$625,155.37 to TDI at its address of 1112 Glacier Drive, Smithton, Pennsylvania. (ECF No. 51 Ex. A.) Additionally, AGLIC argues that there were a substantial number of communications directed by Pinnacle to TDI in Pennsylvania, including e-mails sent by Mr. Trader (ECF No. 51 Ex. B), as well as telephone communications directed by Trader to Pennsylvania on behalf of Pinnacle (ECF No. 51 Ex. C). AGLIC also contends that Pinnacle contracted with or communicated with other Pennsylvania companies (Center Rock, Inc., Nabors Completion & Production Services Co./Superior Well Services, Baker-Hughes) in connection with the project (ECF No. 51 Exs. D, E, F, G).

Pinnacle responds that many of AGLIC's references are simply incorrect. AGLIC references the "Gary No. 50 Mine," the "Green Ridge #1 mine" and the "Pinnacle Preparation Plant" (ECF No. 51 Ex. I at 3, 8, 49), but Pinnacle indicates that AGLIC does not identify the locations of the mines—which are all located in West Virginia—but rather the contact information for the ownership of the mines in 2006. (ECF No. 61 at 3-4 & nn.3-7) (citing news publications and other public websites establishing that the mines are located in West Virginia). See Secretary of Labor, Mine Safety & Health Admin. v. U.S. Steel Mining Co., Inc., 15 FMSHRC 1541, 1542 (Aug. 27, 1993) ("U.S. Steel owns and operates the Gary No. 50 Mine located in West Virginia.") The Green Ridge #1 Mine is an abandoned mine located in Wyoming County, West Virginia. (ECF No. 61 Ex. 1.) The Pinnacle Preparation Plant is an active mine, also located in Wyoming County, West Virginia. (ECF No. 61 Ex. 2.) In a Second Affidavit, Mr. Trader asserts that:

> Pinnacle Mining Company, LLC, does not own or operate any coal mines or other facilities or business operations in the Commonwealth of Pennsylvania. Nor did Pinnacle own or operate any coal mines or other facilities or business operations in the Commonwealth of Pennsylvania during the time period that the drilling discussed in the Amended Complaint, and Complaint filed before it, was contracted for or took place.

9

(Second Trader Aff. ¶ 4.)[4] He also reasserts that the contract between Pinnacle and TDI did not involve any performance in Pennsylvania; that Pinnacle is not registered to do business in Pennsylvania and does not own any property, do any business, operate any facilities, maintain offices or employees, or have systematic or continuous contacts with Pennsylvania; that Pinnacle is member managed by two individuals whose offices are in Natural Bridge, Virginia; that Pinnacle is not directed, controlled, or coordinated from Pennsylvania; that day-to-day operations are not coordinated or controlled from Pennsylvania; that Pinnacle does not employee any persons to work on a day-to-day basis within Pennsylvania; and that the contract and services giving rise to the Complaint and Amended Complaint arise out of work performed solely within the State of West Virginia, where the borehole was drilled and does not contemplate any activity by Pinnacle or TDI in Pennsylvania and was awarded based on a proposal from TDI to perform the work in West Virginia. (Second Trader Aff. ¶ 5.)

Moreover, Pinnacle acknowledges that it was briefly owned, between 2003 and 2007, by a Pennsylvania-based company, but this ownership occurred years before the dispute arose in the Underlying Tort Action.[5] Pinnacle notes that the coverage period for the insurance policy at issue was from June 1, 2013 to June 1, 2014. (Am. Compl. Ex. B at 2.) Finally, Pinnacle states that AGLIC's reference to Pinnacle "availing itself of the resources of the Allegheny County

---

[4] ECF No. 33 Ex. 4. AGLIC contends that Mr. Trader's affidavit is carefully crafted and does not deny that Pinnacle "recently" operated mines in Pennsylvania (ECF No. 54 at 12). However, it has not responded to Pinnacle's citations which show that the three Pinnacle mines referenced by AGLIC are all located in West Virginia and that AGLIC's document identifies the mines as having <u>mailing addresses</u> in Pennsylvania in 2006 because Pinnacle was then owned by a Pennsylvania company. (ECF No. 61 at 2-4 & nn.3-7.) Moreover, Pinnacle notes that, in the case against it cited by AGLIC (ECF No. 51 Ex. K), Pinnacle Mine is identified as being in Pineville, West Virginia and Pinnacle is listed as having a mailing address in Cleveland, Ohio.

[5] Pinnacle indicates that it was sold to PennOak Resources, LLC in 2003 and then to Ohio-based Cliffs Natural Resources in 2007 and to West Virginia-based Seneca Coal Resources, LLC in December 2015. (ECF No. 61 at 3-4.)

10

Court of Common Pleas" (ECF No. 51 Ex. L) involved a 2006 ancillary action filed by Pinnacle to domesticate a subpoena in Pennsylvania in aid of a West Virginia civil action (because the business was outside of the West Virginia court's jurisdiction). Pinnacle points out that AGLIC cites no authority in support of the argument that this act by Pinnacle somehow permanently waived its right to contest personal jurisdiction.

General Personal Jurisdiction

As noted above, the Supreme Court has held that the proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler, 134 S.Ct. at 761 (quoting Goodyear, 564 U.S. at 919). Other than in an "exceptional case," the only forums that will be appropriate are a corporation's state of incorporation and its principal place of business. Id. at 761 n.19.

As recently observed by another district court:

> While Great Plains is an LLC and not a corporation, the reasoning of Daimler applies with equal force. Although the language of Daimler speaks only in terms of corporations, the subsidiary at issue in Daimler was Mercedes-Benz USA, LLC ("MBUSA"). See Daimler, 134 S. Ct. at 751. In determining whether the United States District Court for the Northern District of California could exercise general jurisdiction over Daimler-Chrysler Aktiengesellschaft ("Daimler"), the Supreme Court concluded that the district court could not exercise general jurisdiction over Daimler because "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there." Id. at 761-62. Even though MBUSA is an LLC, the Court looked to MBUSA's place of incorporation and principal place of business to determine whether it was essentially at home in California and thus subject to general jurisdiction in the State.

Finn v. Great Plains Lending, LLC, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016). See also Miller v. Native Link Constr., LLC, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017); Mitchell v. Fairfield Nursing & Rehab. Ctr., LLC, 2016 WL 1365586, at *6 (N.D. Ala. Apr. 6,

11

2016); Pittman v. Joe K. Pittman Co., LLC, 2015 WL 8492531 (E.D. Miss. Dec. 10, 2015). As the Court of Appeals for the Second Circuit has observed, "Daimler's reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity." Waldman v. Palestine Liberation Org., 835 F.3d 317, 322 (2d Cir. 2016) (concluding that Palestinian Authority was "at home" in the place where it governed, namely Palestine, and the same reasoning applied to the PLO; neither entity was "at home" in the United States). See also BNSF Railway Co. v. Tyrell, 137 S.Ct. 1549,1559 (2017) ("Daimler … applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued.")

Plaintiff has not pointed to "exceptional circumstances" and thus Pinnacle cannot be haled into court on the basis of general personal jurisdiction in Pennsylvania, which is neither its state of incorporation nor the state of its principal place of business. (Trader Aff. ¶ 3.) Nor do Pinnacle's purchases of equipment from Pennsylvania companies suffice for purposes of general jurisdiction. As the Supreme Court has held, "mere purchases [made in the forum state], even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Helicopteros, 466 U.S. at 418 (footnote omitted).

AGLIC requests, in the alternative, leave to conduct jurisdictional discovery, specifically on the question of how much coal Pinnacle sells to Pennsylvania customers each year. (ECF No. 54 at 11.) However, the Supreme Court has explained that "the general jurisdiction inquiry does not focus solely on magnitude of the defendant's in-state contacts. Rather, the inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many

places can scarcely be deemed to be at home in all of them." BNSF, 137 S.Ct. at 1559 (citing Daimler, 134 S.Ct. at 762 n.20). The Court in BNSF held that the business the railroad conducted in Montana was sufficient for claims arising out of that business, but not for general personal jurisdiction over claims that were unrelated to any activity occurring in Montana. AGLIC has proffered no basis for concluding otherwise with respect to Pinnacle's alleged coal sales in Pennsylvania.

      Specific Jurisdiction

AGLIC also argues that Pinnacle is subject to specific personal jurisdiction, based on two facts: Pinnacle entered into a contract with TDI, a Pennsylvania company; and Pinnacle required that TDI list it as being an "additional insured" on TDI's insurance policy. However, Pinnacle argues that AGLIC cites no authority in support of this position and that it has cited authority explicitly to the contrary.

The Supreme Court has held that "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S.Ct. 1115, 1122 (2014). The Court noted that:

> To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.

Id. at 1123 (citing Burger King, 471 U.S. at 475) (other citations omitted).

The Court of Appeals has held that "a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" Grand Entm't Group, Ltd. v.

Star Media Sales, Inc., 988 F.2d 476, 479 (3d Cir. 1993) (quoting Burger King, 471 U.S. at 478).

As Judge Fischer has observed:

> Where the only contacts an out of state defendant has with the forum state are that it concluded a contract with a forum state plaintiff and sent some related communications to that plaintiff, and where the contract negotiations were initiated by the plaintiff, the contract is to be performed entirely outside the forum state, the contract does not contain a choice-of-law clause designating the application of forum state law, and the contract does not create long-term or substantial ties with the forum state, the defendant does not have sufficient contacts [with the forum state to grant forum state courts personal jurisdiction].

Hufnagel v. Ciamacco, 281 F.R.D. 238, 246-47 (W.D. Pa. 2012) (quoting Rotondo Weinrich Enterprises, Inc. v. Rock City Mechanical, Inc., 2005 WL 119571, at *6 (E.D. Pa. Jan. 19, 2005)). See also Utilitech, Inc. v. Somerset Med. Ctr., 2006 WL 1687046, at *7 (E.D. Pa. June 15, 2006) (finding a lack of personal jurisdiction in Pennsylvania when: "The work that was to be performed under the contract was analyzing the hospital's expenditures, requiring research and information gathering that all took place in New Jersey. All of the work performed concerned or was directed at the hospital in New Jersey.")

AGLIC cites Grand Entertainment, but in that case the defendant had deliberately and personally directed at least twelve communications to the forum, had engaged in negotiations for an agreement that would have created rights and obligations among citizens of the forum, and had endeavored to create significant ties with the forum state. 988 F.2d at 483. In Hufnagel, Rotondo and Utilitech, by contrast, the agreements did not create rights and obligations among Pennsylvania residents and the contracts were to be performed outside Pennsylvania.

Pinnacle argues that AGLIC's other citations are also to cases in which the defendants were parties to insurance contracts, not third-party beneficiaries or additional insureds. See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., 885 F. Supp. 2d 767 (E.D. Pa. 2012) (fraud in the inducement claim arising out of a law firm's communications with its client); Cargill

14

Cocoa & Chocolate, Inc. v. ABCO Labs, Inc., 2014 WL 4795028, at *3 (E.D. Pa. Sept. 26, 2014) (breach of contract claim arising out of e-mail communications in which the contract was formed). In this case, by contrast, Pinnacle argues, the coverage dispute does not arise out of Pinnacle's alleged contacts with Pennsylvania and thus the communications between Mr. Trader and TDI that are attached to AGLIC's response are irrelevant to the question at hand. See also Colony Nat'l Ins. Co. v. DeAngelo Bros., Inc., 2015 WL 390916 (M.D. Pa. Jan. 28, 2015) (no personal jurisdiction in Pennsylvania over railroad incorporated in Delaware and with its principal place of business in Nebraska in declaratory judgment action brought by Virginia corporation and New York intervenor to determine rights to insurance policy which, insofar as it related to railroad at all, indemnified railroad for accident that occurred in Oklahoma).

AGLIC cites Reassure America Life Insurance Co. v. Midwest Resources, Ltd., 721 F. Supp. 2d 346 (E.D. Pa. 2010), a declaratory judgment action arising from a claim for coverage under a Pennsylvania insurance policy in which the court held that personal jurisdiction could be asserted over a non-Pennsylvania resident. In that case, however, the defendant (Midwest) had purchased the life insurance policy of a Pennsylvania resident (Miller) and the court held that:

> The contract between defendant and Miller …had a substantial connection with Pennsylvania. According to the terms of that contract, defendant acquired an interest in a life insurance policy issued in Pennsylvania on the life of a Pennsylvania resident. Moreover, the underlying offer was mailed to Miller's residence in Pennsylvania and the underlying documents were all executed in Pennsylvania. Finally …the mental state of the insured individual—i.e., his intent at the time of the application to sell the policy to a third party without an insurable interest—is a central issue in this litigation and crucial witnesses are likely to be found in Pennsylvania.
>
> The contract between defendant and Miller also contemplated extensive future contacts with Miller, his family, and his physicians, all of whom were likely to be Pennsylvania residents. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of

15

> their activities." Burger King, 471 U.S. at 473, 105 S.Ct. 2174 (quoting Travelers
> Health Ass'n v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

Id. at 354-55 (footnotes omitted). In this case, however, as in the cases distinguished in Reassure, the underlying contract has little or no connection with activities inside the forum state. Rather, the contract involved TDI performing work for Pinnacle at Pinnacle Mine in West Virginia.

In addition, Pinnacle cites case law on the precise situation presented here, namely whether being named as an additional insured on an insurance policy is the type of minimum contact sufficient to create specific personal jurisdiction. In Liberty Mutual Fire Insurance Co. v. Southeastern Mechanical Services, Inc., 2010 WL 2509505 (M.D. Fla. June 18, 2010), Liberty Mutual filed a declaratory judgment action in Florida to determine whether it owed coverage to Southeastern Mechanical Services, Inc. (a Florida corporation), which had been sued by Texas-based electrical power generator San Miguel Electrical Cooperative, Inc. in federal court in Texas. San Miguel had hired Southeastern to perform maintenance on its boiler tubes and had required Southeastern to name San Miguel as an additional insured on any insurance policy Southeastern carried that was related to the maintenance it performed for San Miguel. Southeastern used improper welding rods, which resulted in leaks and the shutdown of the plant, and San Miguel lost revenue from electricity generation. San Miguel moved to dismiss on the grounds of lack of personal jurisdiction and Liberty Mutual pointed to San Miguel's mandate that it be listed as an additional insured under Southeastern's policy with Liberty Mutual as a basis for specific jurisdiction.

The court rejected this argument:

> The limited case law on the subject … supports San Miguel's argument that being
> a potential third party beneficiary of an insurance policy, in and of itself, does not
> bring a defendant within the reach of section 1(d) of the Florida Long–Arm

16

> Statute. Chicago Ins. Co. v. Lammers, 6:06–cv–658–Orl–28JGG, 2006 U.S. Dist. Lexis 97079, *5–6, 2006 WL 5085250 (M.D. Fla. Oct. 31, 2006). Even if the Court were to accept Liberty Mutual's argument that San Miguel's mandate constituted a "contract to insure" under the Florida Long–Arm Statute, this Court agrees with San Miguel that the person, property, or risk in such a case would be San Miguel. Because San Miguel is located in Texas rather than Florida, there would be no insured property in Florida to bring San Miguel within section 1(d) the Florida Long–Arm Statute.

Id. at *4 (footnote omitted). In addition, in performing a due process analysis, the court indicated that it would address the following questions: 1) whether Liberty Mutual's complaint arose out of San Miguel's mandate that it be added to the policy as an additional insured; 2) whether San Miguel's mandate constituted purposeful availment of conducting activities in Florida; and 3) whether San Miguel could reasonably anticipate being haled into a Florida court for the current action. The court answered the questions as follows:

> In order to find that Liberty Mutual's complaint arises out of San Miguel's mandate, there must be a "substantial connection" between San Miguel's activities and the State of Florida, and such activities must be a proximate cause of Liberty Mutual's complaint. This Court is not persuaded that San Miguel's mandate that it be added to Southeastern's Policy is a proximate cause of Liberty Mutual's complaint. More likely, the proximate cause of Liberty Mutual's complaint is Southeastern's actions in the State of Texas.
>
> The next issue to be determined is whether San Miguel's mandate constitutes purposeful availment of conducting activities within Florida. The Court finds that the answer to this question is "no" for two reasons: (1) San Miguel's mandate is present in every one of its contracts, and thus there was no specific direction of activity at the State of Florida in the present case and (2) this Court is not convinced that San Miguel had any particular reason to know that Southeastern's policy was "issued and delivered" in the State of Florida.
>
> As to the final specific jurisdiction question, Liberty Mutual has not succeeded in persuading the Court that San Miguel could have reasonably anticipated being haled into a Florida court. The Court places particular emphasis on the fact that San Miguel's contracts with Florida companies comprise only a small percentage of its total annual expenditures, and the fact that it is undisputed that San Miguel inserts its insurance mandate into every contract that it enters into.

Id. at *5-6.  See also Stella Maris Ins. Co., Ltd. v. Catholic Health East, 2010 WL 3522106, at *5 (E.D. Pa. Sept. 8, 2010) (New York doctor whose only connection to Pennsylvania was that he was claiming his rights under a policy governed by Pennsylvania law, but was only a third-party beneficiary to the policy, could not be subjected to personal jurisdiction in Pennsylvania).

Pinnacle argues that, by the same reasoning, although it required TDI to name it as an additional insured on its policy with AGLIC with respect to work TDI performed at a dewatering project at the mine located in West Virginia, AGLIC has offered no proof that Pinnacle had reason to believe that TDI's policy would be "issued and delivered" in Pennsylvania or that Pinnacle should have reasonably anticipated being haled into a Pennsylvania court as a result of any action arising out of the project at the mine.  In addition, AGLIC has not demonstrated that Pinnacle's requirement that TDI name it as an additional insured with respect to work performed at the Pinnacle Mine was a proximate cause of AGLIC's complaint.

Therefore, Pinnacle's motion to dismiss will be granted.[6]  An appropriate order follows.

---

[6] In the alternative, Pinnacle suggests that this case could be transferred to the Southern District of West Virginia, where the Underlying Tort Action is being litigated.  Because Pinnacle's motion to dismiss should be granted, the Court need not address the alternative transfer argument.

ORDER

AND NOW, this 26th day of October, 2017, for the reasons identified above,

IT IS HEREBY ORDERED that the motion to dismiss the Amended Complaint filed by Defendant Pinnacle Mining Company, LLC (ECF No. 33) is granted.

        s/Robert C. Mitchell_____
        ROBERT C. MITCHELL
        United States Magistrate Judge